If it pleases the court, my name is Dominic Gentile. I am the attorney for Tara Mazzeo. On the very second paragraph of the introduction to the Ninth Circuit model instructions, it reads, the instructions in this manual are models. They are not mandatory and must be reviewed carefully before use in a particular case. They are not a substitute for the individual research and drafting that may be required in a particular case, nor are they intended to discourage judges from using their own forms and techniques for instructing juries. The second page has a caveat. It says the Ninth Circuit Court of Appeals does not adopt these instructions as definitive. Indeed, occasionally the correctness of a given instruction may be the subject of a Ninth Circuit opinion. And that's why we're here. Okay, was the instruction given at trial correct? The instruction given at trial was based on – It seems to me that could be answered with a yes or no. No. It was not correct. It was not correct. Did it represent the law of extant at the time? In the Ninth Circuit. But it totally ignored Bryan, and there's a reason for that. But what you're saying is that the instruction was correct in the Ninth Circuit, but that we should take consideration of another case and depart from the Ninth Circuit rule in your case. I subject – yes. And now here's why. Isn't that a little bit of a problem with us under Miller v. Gammey? If the lawyer in Titoyen would have called to this Court's attention the existence of Bryan, which he did not, nor did the government, in Titoyen the Court said that it was consistent with current Supreme Court law, and it wasn't. Well, assume you're right. I'm not sure you are, but assume you're right, that Shaw somehow is inconsistent with the Toyen. We're in a 2255. Is it – does it fall below the applicable standard of professional care for somebody to not object to an instruction that conforms with extant Ninth Circuit law? It depends on why. If, as a strategic motive – Period. I mean, I'm just – let's assume – I'm asking as an absolute matter. You have an instruction that is consistent with current Ninth Circuit law. Perhaps that law should be changed by the Supreme Court. Is it strickland, inefficient, incompetent representation not to object to that instruction in order to preserve the issue for the Supreme Court? Yes, it is outside the range of reasonably competent professional assistance. No competent lawyer would simply say the Ninth Circuit's decided this. I'm not going to challenge it. No competent lawyer would say that without researching it. That's what this is all about. The ultimate error in the case was the failure to object and the failure to propose a Bryant instruction. But the root of it was the failure to do anything at all other than accept the proffered instructions given by the prosecutor, your adversary in a case, and not follow the introductory caveat of the model instructions themselves. That's where the error comes in. That's where the standard lies. And the standard, the basis of the standard – you know, we put in some declarations, and those are nice. I understand that. They are also something that the Court can look to. You can also look to the ABA standards and the Nevada Rules of Professional Accounting. But the real strength of our argument is the introductory language to the model rules themselves. They tell a lawyer that he's supposed to research them. So let's get back to your basic intention, the answer to Judge Hawkins's question. Why is Titoian wrong? Bryant just says, as a general matter, when used in a criminal context, willful is one where the defendant acted with knowledge. But it doesn't say in every case. And Titoian deals with a specific statute, and it says under that statute, willfulness doesn't require knowledge that your conduct is unlawful. Why is Titoian inconsistent with Bryant? Bryant doesn't set down a universal rule. It says, as a general matter, but you've got to look at each individual statute. Well, every application of Bryant since Bryant by any appellate court — Has any appellate court found that actual knowledge of that your conduct violates a statute — Third Circuit. — is required with respect to this statute? 1001, yes, the Third Circuit. And then, I hate to mention his name, but in the D.C. Circuit, a very articulate opinion on that issue was written by Judge Kavanaugh. Why do you hate to mention his name? I'm not trying to curry favor. And maybe I wouldn't be anyhow. Maybe it's going to be the opposite. But be that as it may, this is — At this point in time, as between Bryant, Ojukwu, and I know, you know, you can't be too pleased with Ojukwu because it was the Solicitor General that turned that around, but he did it for the purpose of recognizing that Bryant applies to that situation. And as it stands right now, our model instruction in this circuit, Ojukwu, Bryant, and there's a case that came out of the Central District, the United States v. Harris. It's a district court judge. But if you read that case, and I can give you the citation, he basically says that this is the law of the circuit. So I recognize that Titoian has not been reversed, but perhaps it has sub silencio. As a matter of being effective anymore, it isn't. And the reason it isn't is not because it was wrongly decided. It was decided based on the briefs that were submitted to the court, which totally omitted any reference to Bryant. Do you want to save the rest of your time for a rebuttal? Good morning. May it please the Court, Elizabeth White for the United States. Really quickly before I begin, I apologize. I need to make a correction to the government's answering brief. Yesterday, as I was preparing for argument, I realized that I actually cited two cases in our answering brief that I should not have cited. On page 19, I cited to United States v. Field, which is an unpublished decision from the Tenth Circuit from 2006. And on page 20, I cited to this Court's unpublished decision in Parker from 2006. Neither of those should have been cited because they were unpublished decisions prior to 2007. That is actually the second time in three days I've had to make such a concession about the government's answering brief. And I will institute new editing procedures when I get back to Nevada, so I apologize for that. Your opponent is correct, isn't he, that Bryant existed when this case was tried, when jury instructions in the Mazzeo case were settled, correct? Yes, yes. And in that case, my understanding is that at some point, the government filed papers indicating that it thought that the requirement of knowledge of illegality flowed over from the statute involved in Bryant to 1001. Yes. Am I correct about that? Yes, that happened after this case. That happened while the case was on appeal. At the time that the jury instructions were filed in this case, the jury instruction for 1001 followed Titoian, which was Ninth Circuit, which was and technically still is the Ninth Circuit law in 1001. Yeah, but that's really not the issue. The issue is whether a competent defense lawyer would recognize that he ought to preserve this issue for appeal, even if he couldn't convince the district judge that Bryant had overruled Titoian if the government no longer believed that Titoian was the law with respect to USC 1001. So tell me why a competent lawyer wouldn't have at least raised this issue. I think that at bottom, that's what we're talking about. The question is, is it constitutionally deficient performance for a defense attorney to rely on the Ninth Circuit model jury instructions? Well, is it constitutionally deficient performance for somebody, for example, not to challenge Plessy v. Ferguson when the schools are segregated in Kansas? There may be a case on point, but there's a very good argument to be made that it ought to be reconsidered. And the defense counsel did nothing to preserve that argument for appeal. And I would submit that that is the difference between the minimal threshold standard of competent counsel and best practices. The declarations that the defense filed with their 2255 talk about best practices. And I will say those declarations, one was from the attorney in Ajoku. Ajoku involved 18 U.S.C. 1035, for which there was no Ninth Circuit law, and there was no Ninth Circuit model jury instruction. So that defense attorney researched and discovered this problem with 1001 and came up with an argument to be made. But I think that the question is, while best practices, yes, if every defense attorney had the time and the resource and the ability to research every one of these jury instructions, and keep in mind, the district court judge here gave 18 jury instructions. Now, the time that it takes to make sure that the jury instructions the judge is going to give are consistent with the model jury instructions is maybe one minute. The time to check that the model jury instructions are consistent with Ninth Circuit law takes a little bit longer. And if the judge here, I mean, I'm sorry, if the defense counsel here had taken the time to look at this jury instruction, what the first thing he would have found is that it's consistent with Ninth Circuit law. Then the question is how far, as a minimal threshold standard of competent assistance, is a defense attorney obligated to go to research to figure out if there's any way to poke holes in current Ninth Circuit law. And what the court said in Strickland and what the court said in the Supreme Court in Harrington is we're not supposed to engage in 20-20 hindsight here. So while they say that the defense attorney was ineffective, was constitutionally deficient for failing to challenge Instructions 11 and 12, you know, really, he didn't challenge any of them. And the question is, were any of those, is there any way to poke holes in those jury instructions that were applicable to the defense? The Supreme Court in Strickland was talking about not second-guessing counsel because we give them deference as to any strategic decisions they make. Is it your position that there was some strategic benefit by not objecting to this instruction? I think maybe not so much strategy as priorities. I mean, the judge issues why. What possible benefit is there to the defendant from not preserving an objection to this instruction? I'm having difficulty seeing what the gain is from not making an objection. For a defense attorney to determine whether there is a, you know, whether there's a hook to challenge a jury instruction, right, that requires time. That requires research on Westlaw. It requires competent representation. I just think that if you're going to say that it is as a minimal threshold constitutional competence, every defense attorney has to research every model jury instruction. That's not what anybody is saying. The question is, given what had gone on with respect to this instruction at the time, forget what happens afterwards, would a competent lawyer have said, you know, there's a good argument to be made here. I might not win it, but I ought to make it. That's really the question. Right. Not whether he should research every instruction. No research, presumably, is needed. With respect to the instruction, it says, excuse me, the guilt has to be proved beyond a reasonable doubt. This is the we're focusing on one instruction. Right. Why is it why was it not? Excuse me. Why shouldn't he have challenged it? The two responses that I would give to that, one is the reason that we're focusing on this one is because with 2020 hindsight, we see that this is the one that there might have been an opportunity. No, no. I don't want to do 2020 hindsight. I want to focus on what a reasonably competent lawyer should have known at the time, not what we know today. Somebody who doesn't challenge it today, I'd have a very easy time finding wasn't competent. Yes, yes. What would a lawyer have known at the time, and why should a lawyer, a reasonably competent lawyer at the time, have known this was an instruction that should have been challenged? What a lawyer would have known at the time is that this was the Ninth Circuit model instruction, which accurately stated Ninth Circuit law. When the IRS agents questioned Tara Mazzio, I think it was at her home, right? Yes. Did they tell her that inaccurate or false responses to their questions would be a violation of law? The testimony at trial was that they told her it was imperative for her to tell the truth. There was — because this wasn't an issue at the trial, because the jury instructions that had been proposed and not objected to were the current Ninth Circuit instructions, there was no testimony about that. And that simply wasn't — that issue was not explored at trial because it was not at issue at trial. I don't — so based on the record that we have, you know, the — one of the agents testified that they told her the quote was that it was imperative for her to tell the — for her to answer their questions truthfully. It sounds like the answer to my question is no. Only that we don't know. I mean, there was nothing in the record that they — that went further than that. There was no follow-up questions after that testimony because, as I say, that question was not at issue in this case. I do want to just say very quickly that defense counsel cites to the ABA professional standards, and those standards say that in representing a client, a defense counsel may engage in good-faith challenge of applicable law if done so openly. Now, I believe that — that at bottom, what the defense is arguing here, or what the appellant is arguing here, is that that needs to be turned on its head and — and to say that in representing a client, a defense counsel must make a challenge to applicable law whenever there is a good-faith basis to do so. Now, that may very well be best practices for the defense bar, but I think that that far exceeds the minimal threshold of — of competence that the Court requires in Strickland. Thank you very much. Thank you. Mr. Gentile? I cannot advise a client as to how to plead unless you can know what's going to be admissible at trial, what facts are of consequence to the resolution of the proceeding. You can't know that without knowing the elements. And so I suggest to you that you don't have to. The ABA standards, I agree with her. They're nice, okay? But they don't establish a standard. They say what you can do in case you got in trouble for doing it. But — but with regard to the elements of an offense, that is the starting point. You cannot prepare even for a guilty plea. But I want to go back to the question I asked you before. Yeah. You'd still have to show prejudice. So what you're really saying to us is this panel should overrule Tutoyen, aren't you? Because if Tutoyen is still the law, you suffered no prejudice. This panel cannot overrule Tutoyen. But that's what you're telling me. No. Because you have to — in a 2255, you not only have to demonstrate that somebody fell below the standard of care, you have to demonstrate prejudice. And the only — I have it. Right? Right. And the only prejudice you could have in this case is if this instruction was erroneous. Correct? The prejudice that flows from that. Right. It has to be an erroneous instruction. Yes. Because if you — and therefore, what you're saying to us is we should say that it was an erroneous instruction. Tutoyen is not the law. If this panel — if this panel — and I don't know the answer, so I'm going to just say that. But if this panel has the ability to go back — We don't. Although we could say Shaw overruled Tutoyen. No, I don't think — I don't think that — I'd like to finish. That Tutoyen was improper — see, that's the problem. Shaw was before Tutoyen. Tutoyen may have been incorrectly decided, but we can't say that because it's decided by a panel of this Court. So what you're really telling us is that — is you want to file a petition for That's just what I was looking for. That's the box. I didn't see that's the problem we have. I don't know that that is necessary. I don't know that this panel cannot analyze Tutoyen and recognize that Bryan wasn't called to the attention of the panel. And if it wasn't called to the attention of the panel, how could it decide it based on Bryan? Even though it was a Supreme Court decision that was nine years old at the time Tutoyen was — See, if Bryan occurred after Tutoyen, we could say it's now been undermined. But it occurred before, written by a distinguished judge who I know well, Tutoyen. It may have been wrong, may have been right, but the question is we can't overrule it. I think several of us know that, Judge. But be that as it may, look, there is — there is no question there is prejudice here. Well, there's only prejudice if the instruction was incorrect. That instruction caused a forfeiture of a complete defense. Well, only if — it only caused a forfeiture if it was incorrect. Do you agree with me? I agree with you. Okay. I mean, so that's our problem. I agree with you. Yes. However — Thank you very much, Mr. Gentile. Thank you, Judge. All right. The next case on the calendar is United States of America v. Dominique Wells.
judges: Hawkins, Bea, Hurwitz